UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN CIMACHOWSKI, | Case No. 1:21-cv-01319 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jennifer Dowdell Armstrong |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff John Cimachowski applied for social security disability benefits, and the Commissioner denied his application. Following a hearing, an administrative law judge did so as well. Plaintiff appealed, and the appellate council denied review, rendering the Commissioner's denial final. Plaintiff seeks review of the Commissioner's decision that his residual functional capacity allows him to perform some of his past relevant work and other jobs in the national economy. For the reasons that follow, the Court determines that substantial evidence supports that determination and **AFFIRMS** the Commissioner's denial of Mr. Cimachowski's application for disability benefits.

**FACTUAL AND PROCEDURAL BACKGROUND**

John Cimachowski was born in 1976 and has a high school education. (ECF No. 7, PageID #73.) He has not worked since 2015 (*id.*, PageID #87), but has previous

work experience as a janitor, a cart attendant, and a security guard. (*Id.*, PageID #72.) He claims he quit his last job because of his anxiety. (*Id.*, PageID #87.)

In 2018, Mr. Cimachowski applied for disability benefits under Title II of the Social Security Act, and the Commissioner denied his application. (*Id.*, PageID #123.) Following a hearing, an administrative law judge did so as well on July 25, 2019. (*Id.*, PageID #132.) On May 13, 2020, the appeals council denied Mr. Cimachowski's request for review, and this decision became Commissioner's final decision. (*Id.*, PageID #64.) He filed a new application for disability benefits under Title II on May 28, 2020. (*Id.*) The Commissioner denied his application on July 27, 2020 and denied his request for reconsideration on September 2, 2020. (*Id.*) On January 15, 2021, the administrative law judge held a hearing at Plaintiff's request. (*Id.*) A vocational expert attended the hearing. (*Id.*) At the hearing, Plaintiff amended his disability onset date to November 7, 2019. (*Id.*, PageID #84–85.)

On February 2, 2021, the ALJ issued a decision finding Plaintiff not disabled. (*Id.*, PageID #74.) The appeals council denied Plaintiff's request for review, rendering the administrative law judge's decision the final decision of the Commissioner of Social Security. (*Id.*, PageID #29.) Mr. Cimachowski requests judicial review under 42 U.S.C. § 405(g). (ECF No. 12, PageID #580.)

A.  **Relevant Medical Evidence**

There are two types of medical evidence relevant to Plaintiff's claim. First, notes from Plaintiff's treating physicians in 2019 and 2020. Second, opinion evidence from State agency psychological consultants Dr. Deryck Richardson and Dr. Ermias Seleshi.

### A.1. Treating Physician Notes

On November 1, 2019, Plaintiff visited his primary care physician Dr. Steve Ricanati for a physical. (*Id.*, PageID #356.) Dr. Ricanati observed that Plaintiff was "alert and anxious," but his affect was "normal." (*Id.*) Dr. Ricanati reported that Plaintiff "cares for his parents." (*Id.*, PageID # 356–57.)

Dr. Arjun Nanda evaluated Plaintiff on November 7, 2019, and observed that he was "calm and cooperative," was oriented to time, place, and person, and had no memory or concentration issues. (*Id.*, PageID #361–63.) She reported that Plaintiff appeared anxious with tight associations but that medication, specifically Klonopin, alleviated his anxiety. (*Id.*) The same day, Dr. Howard Gottesman noted that Mr. Cimachowski "worries all the time" and is taking care of his parents, and his stress from that care is "ongoing." (*Id.*, PageID #361.)

Ten days later, the resident physician who evaluated Mr. Cimachowski recommended that he continue to take his current dosage of Klonopin, and that his "stress with taking care of his mother and father is ongoing." (*Id.*, PageID #361–62.) Dr. Gottesman wrote that he agreed with this assessment. (*Id.*) But he opined that "this is a pt who warrants in my opiion disbility his ability to function is greatly hampered by his chronic mental illness." (*Id.*, PageID # 363 (errors in original).)

On January 30, 2020, Plaintiff visited MetroHealth to treat a suspected chest injury. (*Id.*, PageID #370.) Plaintiff reported that he sustained the injury while helping his father walk to the restroom. (*Id.*, PageID #371.)

Plaintiff visited Drs. Nanda and Gottesman again on May 7, 2020. (*Id.*, PageID #495.) Dr. Nanda reported that Plaintiff was "cooperative," "calm," and

"appropriate," he was oriented to time, person, and place, and his memory was within normal limits. (*Id.*) Also, he displayed a "euthymic mood." (*Id.*) Plaintiff reported that he was "taking care of his parents" and "mostly stays isolated," but goes out in the yard for fresh air. (*Id.*) Further, he reported that his current dosage of Klonopin continued to work well. (*Id.*)

Less than a year later, on October 13, 2020, Dr. Ricanati noted that Plaintiff was "alert" with a "normal affect" and that they spoke about "regular exercise and eating real food." (*Id.*, PageID #549–50.) However, Plaintiff reported that he was experiencing "increased anxiety," "nervousness," and "palpitations." (*Id.*) He felt like the road was "playing tricks" on his mind while driving, and he experienced anxiety when wearing a face mask. (*Id.*) Plaintiff told Dr. Ricanati that he would talk with his psychiatrist about increasing his dosage of Klonopin. (*Id.*) Dr. Ricanati's notes dated October 19, 2020 reflect a similar sentiment. He diagnosed Plaintiff with "anxiety disorder" that was "uncontrolled" and documented the recommendation that Plaintiff should follow up with his psychiatrist. (*Id.*, Page ID #559.)

On October 27, 2020, Plaintiff saw Dr. Hajra Ahmad and Dr. Gottesman. Dr. Ahmad noted Plaintiff's anxiety, but observed that he was "cooperative and calm and oriented in all spheres, had sustained attention and concentration . . . ." (*Id.*, PageID #555.) During that visit, Dr. Gottesman increased Plaintiff's dosage of Klonopin and diagnosed him with globus hystericus. (*Id.*, PageID #556.)

### A.2. Medical Opinions Based on the Record

State psychological consultants Dr. Deryck Richardson and Dr. Ermias Seleshi, who did not treat Plaintiff, reviewed the record and provided the

4

Commissioner with their conclusions. Dr. Richardson reviewed the record on July 24, 2020 and reported that Plaintiff's mental residual functional capacity remained consistent with the determination the ALJ made in July 2019. (*Id.*, PageID #142.) He addressed Dr. Gottesman's conclusion that Mr. Cimachowski warrants disability by noting that Dr. Gottesman "does not provide any insight into the specific nature of the [claimant's] difficulty with functioning." (*Id.*) Ultimately, Dr. Richardson adopted the mental residual functional capacity findings from the prior ALJ's 2019 decision. (*Id.*) Dr. Seleshi reviewed the record on September 2, 2020 and made the same determination. (*Id.*, PageID #150.) Like Dr. Richardson, Dr. Seleshi adopted the prior administrative findings as to Mr. Cimachowski's residual functional capacity. (*Id.*)

### B. Hearing Testimony

Mr. Cimachowski testified at the hearing before the ALJ. (*Id.*, PageID #86–108.) Plaintiff claims that he cannot work due to anxiety and the overwhelming stress that he experiences from working, being in public, and being around people. (*Id.*, PageID #97–98.) He experiences stress while at home and when caring for himself. (*Id.*, PageID #99.) He testified that he bathes once a month. (*Id.*, PageID #101.) He testified that he does not like to be around others and that going out exacerbates his stress level. (*Id.*, PageID #98.) He expressed difficulty with concentration, suggesting that even watching films or television stresses him out. (*Id.*, PageID #104 & 107.) Plaintiff takes Klonopin twice a day for his anxiety. (*Id.*, PageID #101–01.)

5

Plaintiff lives with his parents and assists in caring for them. (*Id.*, PageID #102.) He testified that this includes making sandwiches for them. (*Id.*, PageID #86.) He claims that he does not interact with anyone other than his parents. (*Id.*, PageID #99–100.) He drives when necessary and, if he goes shopping, goes early and tries to finish as fast as possible. (*Id.*, PageID #102.)

Also, a vocational expert testified at the hearing before the ALJ. (*Id.*, PageID #109–17.) The ALJ asked the vocational expert to consider whether a hypothetical person of Plaintiff's age, work history, and residual functional capacity could perform Plaintiff's past relevant jobs or jobs available in the national economy. (*Id.*, PageID #114.) The expert opined that Plaintiff could perform his past relevant work as a janitor and cart attendant. (*Id.*, PageID #115.) Further, the expert testified that Plaintiff could perform other jobs in the national economy including, but not limited to work as an industrial cleaner, a mailroom clerk, or a final inspector. (*Id.*, PageID #116.) Plaintiff's attorney cross-examined the vocational expert. On cross-examination, Plaintiff's counsel asked whether there were jobs available for a hypothetical claimant who could have no contact with the public and who should, in addition, work in isolation. (*Id.*, PageID #117.) In response, the vocational expert conceded that the restriction involving working in isolation would make such a person unable to work in any competitive employment position. (*Id.*) Further, the vocational expert testified that most employers' tolerance for off-task time would be ten percent, and two days' absence from work per month. (*Id.*)

6

### C. Administrative Law Judge's Decision

The administrative law judge determined that Mr. Cimachowski was not disabled under the Social Security Act. (*Id.*, PageID #64–74.) After considering the evidence presented, the ALJ conducted the five-step analysis of 20 C.F.R. § 404.1520(a). (*Id.*, PageID #67–74.)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended disability onset date of November 7, 2019. (*Id.*, PageID #67.) At step two, the ALJ found that that Mr. Cimachowski has the following severe impairments: anxiety, obsessive compulsive disorder, and somatic symptom and related disorders. (*Id.*) At the next step, the ALJ found that Mr. Cimachowski did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 416.920(d), 416.925 & 416.926. (*Id.*, PageID #67–69.)

Next, the ALJ examined Mr. Cimachowski's residual functional capacity. (*Id.*, PageID #69–72.) Based on the record, the ALJ concluded that Mr. Cimachowski's mental impairments could reasonably be expected to cause the symptoms that he alleges prevent him from working. (*Id.*, PageID #70.) However, Mr. Cimachowski's testimony concerning the limiting effects of his symptoms was inconsistent with the evidence in the record. (*Id.*) Therefore, the ALJ found that Plaintiff had the residual functional capacity to perform a range of work at all exertional levels with certain non-exertional limitations. (*Id.*, PageID #69.) Specifically, the ALJ found that Mr. Cimachowski "can perform no complex tasks but can do simple, routine tasks" that are low stress, can never have contact with the public, can have occasional

7

interactions with co-workers, and can work in a "static setting" where he does the same work daily. (*Id.*) This is the same residual functional capacity the prior ALJ determined applied to Mr. Cimachowski in July 2019. (*Id.*, PageID #127.)

Based on this residual functional capacity, the ALJ found that Mr. Cimachowski was able to perform his past relevant work as a janitor or cart attendant, but not as a security guard. (*Id.*, PageID #72.) Considering Mr. Cimachowski's residual functional capacity, age, and education, and work experience, the ALJ found in the alternative that there are other jobs in the national economy that Mr. Cimachowski can perform, such as mail room clerk, industrial cleaner, or final inspector. (*Id.*, PageID #73.) Therefore, the ALJ determined that Mr. Cimachowski was not disabled within the meaning of the Social Security Act. (*Id.*, PageID #74.) The ALJ's decision became final when the Appeals Council denied further review. (*Id.*, PageID #29–32.)

### D. Plaintiff's Arguments

Plaintiff challenges the Commissioner's decision on a single ground. (ECF No. 12, PageID #579.) He contends that the ALJ erred by primarily adopting the prior administrative law judge's evaluation of Plaintiff's residual functional capacity. (*Id.*) Specifically, he argues that the ALJ erred by (1) finding that there was no new and material evidence related to his disability, and (2) adopting the residual functional capacity finding from the July 22, 2019 decision, positing that there is no "logical bridge between the evidence and the ALJ's residual functional capacity determination." (*Id.*, PageID #584.) In support of this argument, Plaintiff points to medical records concerning the severity of his mental illness after the prior ALJ's

8

July 2019 decision and argues the ALJ either failed to consider that evidence or misunderstood it. (*Id.*, PageID #585–86.) Defendant asserts that the ALJ adequately reviewed all the evidence in the record in determining that Plaintiff is not disabled, therefore, substantial evidence supports that determination. (ECF No. 13, PageID #604–605.)

## ANALYSIS

Under 42 U.S.C. § 405(g), the findings of an administrative law judge are conclusive if substantial evidence supports them. Therefore, the Court limits its review to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any legal errors de novo. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th Cir. 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

### I. Opinion Evidence

Mr. Cimachowski asserts that the ALJ erred in weighing the opinions of Drs. Richardson and Seleshi because they did not provide specific information to support their adoption of the prior ALJ's determination of Plaintiff's residual functional capacity. (ECF No. 12, PageID #587.) Plaintiff claims that the ALJ improperly considered this medical opinion evidence and discounted medical evidence

9

that contradicted the 2019 residual functional capacity determination. (*Id.*, PageID #585.)

To determine the persuasiveness of a medical opinion, an ALJ considers several factors. 20 C.F.R. § 404.1520c(a); *Kreilach v. Commissioner of Soc. Sec.*, No. 1:20-cv-00875, 2022 WL 3347334, at *8 (N.D. Ohio Aug. 15, 2022). The most important factors, which the ALJ must consider and articulate in her decision, are the supportability and consistency of the medical opinion in relation to the objective medical evidence. *Id.* § 404.1520c(b)(2). In her discretion, the ALJ may consider additional factors such as the medical source's specialization and relationship with the claimant. *Id.* § 404.1520c(c)(3–5). If the ALJ determines that two medical opinions are equally supported by and consistent with the medical record but are not exactly the same, then the ALJ must consider additional factors. *Id.* § 404.1520c(b)(3).

For both Dr. Richardson and Dr. Seleshi, the ALJ analyzed the persuasiveness of the medical opinions by considering and articulating their supportability and consistency with the medical record. (ECF No. 7, PageID #72.) The ALJ determined that both opinions were persuasive because they were consistent with the evidence in the record. (*Id.*) The ALJ provided several examples of this consistency. In May and November 2020, Plaintiff's treating physicians noted that he was calm and cooperative and did not display issues with concentration or memory. (*Id.*) And records dated October 27, 2020, the most recent records of Plaintiff's mental status, also reflected that he was cooperative and calm, and his concentration and memory

10

were within normal limits. (*Id.*) For these reasons, the ALJ found Dr. Richardson's and Dr. Seleshi's opinions persuasive because their determinations that Plaintiff had the residual functional capacity to perform some work were consistent with the evidence of Plaintiff's demeanor and mental state as documented in the record.

Plaintiff argues that the ALJ's determination that these opinions were persuasive is not reasonable because they did not list specific information in support of their conclusions. (ECF No. 12, PageID #587.) Plaintiff points to evidence in the record that he contends discredits the medical opinions. Specifically, one of Plaintiff's treating physicians, Dr. Gottesman, wrote on November 17, 2019 that Plaintiff is "a pt who warrants in my opiion disability his ability to function is greatly hampered by his chronic mental illness." (ECF No. 7, PageID #363 (errors in original).) An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citations omitted); *see also Baker v. Colvin*, No. 1:15-cv-00910, 2016 WL 4128435, at *13 (N.D. Ohio Aug. 3, 2016) (stating that a diagnosis alone does not establish that a condition is disabling or the extent, if any, of the functional limitations that the conditions cause). However, the ALJ found that Dr. Gottesman's conclusory declaration of Plaintiff's disability status was not consistent with substantial evidence in the record that Plaintiff was calm, cooperative, and had no issues with memory or concentration. (ECF No. 7,

PageID #72.) In contrast, the opinions of Dr. Richardson and Dr. Seleshi were consistent with this evidence.

For these reasons, the Court determines that substantial evidence supports the ALJ's determination regarding the persuasiveness of the medical opinions at issue. While Dr. Richardson and Dr. Seleshi provided cursory statements regarding their evaluations of Plaintiff's medical records, they were consistent with evidence in the record before the ALJ, while Dr. Gottesman's cursory opinion was not.

## II. Substantial Evidence for RFC Determination

Plaintiff's primary argument in favor of remand to the Commissioner is that his condition worsened after the ALJ's July 2019 decision; therefore, the ALJ in this proceeding erred by adopting the previous ALJ's determination of his residual functional capacity. ([ECF No. 12](), PageID #584.) Specifically, Plaintiff claims that he presented five pieces of new and material evidence relevant to his mental residual functional capacity: (1) Dr. Gottesman diagnosed him with globus hystericus; (2) he reported increasing and uncontrolled anxiety; (3) he developed severe obsessions; (4) he demonstrated an increasing need to isolate; and (5) Dr. Gottesman increased his dosage of Klonopin. (*Id.*, PageID #589.)

### II.A. Residual Functional Capacity

The ALJ must determine whether the claimant maintains "residual functional capacity" to work, and what type of work his residual functional capacity allows him to do. 20 C.F.R. §§ 404.1520(e) & 404.1520(f). Residual functional capacity is an assessment of the individual's physical and mental work abilities, or "what the individual can do despite his or her limitations." *Davila v. Commissioner of Soc. Sec.*,

12

993 F.Supp.2d 737, 753 (N.D. Ohio Jan. 28, 2014); 20 C.F.R. § 404.1520(g). The Commissioner reserves the express right to determine a claimant's residual functional capacity, and the ALJ assesses a claimant's residual functional capacity "based on all the relevant evidence" available from the record. 20 C.F.R. § 404.1527(d)(2).

The ALJ must consider all limitations, both severe and non-severe. Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, at *5 (S.S.A. July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." *Id.* at *7. However, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite to specific evidence "does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Where there is a previous adjudication of Plaintiff's claim under the same title of the Act, the ALJ "must adopt" the prior finding "unless there is new and material evidence" or there has been an intervening change in law. SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998).

**II.B. ALJ's Reasoning**

Here, the ALJ based her determination of Mr. Cimachowski's residual functional capacity on a primary fact consistent across the record in this proceeding and the 2019 proceeding. Specifically, Mr. Cimachowski's statements concerning the intensity and limiting effects of his symptoms were inconsistent with the evidence, including medical evidence. (ECF No. 7, PageID #70.) While Dr. Gottesman deemed Plaintiff's ability to function "greatly hampered by his chronic mental illness," this

opinion is inconsistent with the rest of the record, which shows that he did not have problems with concentration or memory and that he consistently appeared "calm and cooperative." (*Id.*, PageID #72.) Plaintiff's physicians noted this demeanor not just during his 2019 visits, but during his visits in 2020 as well. (*Id.*, PageID #72, 361–63, 495 & 555.) Further, while Plaintiff's physician increased the dosage of Klonopin in 2020, the ALJ determined based on the record that Mr. Cimachowski responds well to medication. (*Id.*, PageID #71.) Further, in his testimony Plaintiff indicated that he barely performed any tasks to care for his aging parents, with whom he lives. (*Id.*, PageID #86.) But the ALJ analyzed the record and concluded that it demonstrates Plaintiff consistently reported stress because of caring for his parents and that he once sustained an injury while assisting his father. (*Id.*, PageID #71.)

Plaintiff argues that the ALJ ignored new evidence of his 2020 diagnosis of globus hystericus. (ECF No. 12, PageID #588.) Neither Mr. Cimachowski nor any of his physicians identified specific symptoms associated with his globus hystericus diagnosis, a condition that causes "difficulty in swallowing" and "a sensation as of a ball in the throat or as if the throat were compressed." Stedman's Med. Dictionary 813 (28th ed. 2006). Even if Plaintiff is correct that this diagnosis supports a finding of greater limitations, the ALJ's omission of the evidence from her decision does not mean she did not consider it or did not determine that substantial evidence continued to support Plaintiff's residual functional capacity from 2019. *See Simons*, 114 F. App'x at 733.

14

Because of the discrepancies between Plaintiff's testimony regarding the severity of his symptoms and the medical evidence, substantial evidence supports the determination that Plaintiff maintained his residual functional capacity from 2019. The record demonstrates that the ALJ considered the totality of the evidence and determined that Plaintiff retained the same mental residual functional capacity because the subsequent records did not present new persuasive evidence supporting greater mental limitations.

Finally, Plaintiff argues that the ALJ did not sufficiently explain her rationale for adopting the prior ALJ's 2019 residual functional capacity determination because she failed to build an accurate and logical bridge between the evidence and her conclusion. (ECF No. 12, PageID #584 (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).) In her explanation for the determination regarding Plaintiff's residual functional capacity, the ALJ succeeds in building an accurate and logical bridge between the evidence and her conclusion. (ECF No. 7, PageID #69–71.) As noted above, she evaluated the record as a whole to determine that Plaintiff's "calm and cooperative" demeanor, memory recall, and ability to provide some care for his parents were consistent with the prior ALJ's determination of Mr. Cimachowski's residual functional capacity, despite Plaintiff's own statements concerning the limiting effect of his conditions. (*Id.*, PageID #70–71.) This record suffices to build the required accurate and logical bridge between the evidence and the conclusion.

In essence, Plaintiff requests the Court to reweigh the evidence the ALJ considered. That is not the job of the Court. Instead, the Court reviews only whether

a reasonable person could have come to the same conclusion as the ALJ. *Jones v. Commissionerr of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Under this standard of review, the record supports the ALJ's decision finding that Plaintiff's residual functional capacity allows him to perform certain of his past relevant jobs and other jobs in the national economy. Accordingly, the Court rejects Plaintiff's issue on appeal.

## CONCLUSION

For the foregoing reasons, the record contains substantial evidence to support the conclusion that Plaintiff is not disabled and has the residual functional capacity to perform past relevant work. Therefore, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**SO ORDERED.**

Dated: February 7, 2023

　　　　　　　　　　　　　　　　　　J. Philip Calabrese
　　　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　　　Northern District of Ohio